May it please the Court, Devin Burstein on behalf of Mr. Melgoza. Your Honors, the Fourth Amendment question here is important. But candidly, the record on that question is anemic. And our ask here, what we're respectfully suggesting, is that the Court shouldn't or need not decide important constitutional questions when the record is this underdeveloped, it lacks evidence, factual findings, and legal analysis. To borrow from this Court's language in the Doof case, we do not believe it prudent to decide the question under these circumstances. Well, it raises the question of whether or not counsel failed to develop the record and preserve the arguments sufficiently that we can even hear them. It could beg that question. We think that it certainly does. I think that there's a number of reasons why the claim is not altogether waived, and it's properly before the Court. I think I can go into those reasons. That would be helpful. So I think number one is, as the government pointed out in its brief, the Court did decide the consent issue. There's no way around that. The Court said, the judge said that my client, Mr. Melgoza, consented. And so what this Court's law says is, quoting from Williams, quote, our Court does not deem an issue waived if the district court actually considered it. To quote again from the Committee House case, even if a party fails to raise an issue in the district court, we generally will not deem the issue waived if the district court actually considered it. And then again from the Xenon Pictures case, waiver based on failure to raise an argument, quote, does not apply where the district court nevertheless addressed the merits of the issue. Did the district court specifically address an issue of extent of the consent? So consent this far but not to opening containers? No. The district court said, I found he consented to the search, full stop. So that's one of the reasons is that we have a finding of consent. We have a finding of consent search. So under this Court's case law, there's no waiver. The second reason is under Solomon. To put a finer point on it, the counsel below never argued that the scope of the consent was limited, correct? Correct. So the second reason we don't have waiver here is under the Solomon case. And under that case, what the Court says is that when there are issues that have been fully briefed and both parties have an opportunity to argue them, the Court does not have to find a waiver in that case either. So I think that's more of a discretionary issue. So when we look at it, in fact, what the government's brief says is, to quote, irrespective of what was argued below, the district court found that Melgoza consented to the search. And the government goes on to say, because the district court decided this issue, the government may rely on this ruling to support the search. Well, if the government gets to rely on the ruling to support the search, certainly we get to rely on the ruling to contest the validity of the search. The answer is clear, right? I mean, we know I can't make the record other than what it is. I'm not standing up here and suggesting that the scope of consent was properly and fully litigated below. But at least the idea of consent was mentioned all throughout the briefing. We see it at ER55, ER60, ER74, ER75, ER76. So we see all of those points. So what we're respectfully suggesting is the proper course, because we do have a shockingly undecided Fourth Amendment issue. I mean, on the scope of consent, whether the scope of consent, when you're asked, do you consent to a search of your person, does that extend to your closed possessions? It's shocking that we don't have a decision on that. I think law enforcement certainly deserves one. But we shouldn't do it on this record. There's a very easy fix here. Our goal collectively as a legal system is to get it right. I mean, I've heard that come down from the bench so many times. Mr. Burstein, we're trying to get it right here. And to get it right here, Your Honor, I know you have a question, so I'll stop talking. I mean, I just — I mean, but we also have lots of precedent, including in Hawkins and Magdarella, saying that on a Fourth Amendment suppression issue, if arguments were not made before the trial court, you know, that they are waived unless there is good cause. And, you know, I can use — so far I haven't seen any articulation of why there was good cause not to challenge either the voluntariness of the consent or the scope of the consent. I understand that there was, you know, other arguments addressed and resolved, but now they're completely new set being raised on appeal. Right, Your Honor. So we do — and I struggle with that, too. Let's just all — you know, putting my cards on the table, I struggle with that, too. We have two — these two kind of conflicting lines of cases, which talk about — I mean, candidly, I think the government's brief makes the strongest point for us in terms of why there's not waiver, which is the district court's finding. But I struggle with this other line of cases that says that if it's not raised and you can't show good cause, then it is waived. So we have that conflicting lines of authority. So is it your argument that we must get to the issue you're raising or that we have discretion to? Under the first point, the court case law is we do not deem them waived. So then in that case, I would say the court would have to. Under the second, the Solomon line of authority, it becomes discretionary. But I do think because we have a finding on consent, we are entitled, that we being the defense, is entitled to rely on that, just as the government is. And then the court would have to decide it. The question for the court then would be, does the court want to decide it on this record or do we actually want to figure out some of the circumstances below? Because those are the keys to the Gimeno analysis. But so now going back to the issue of what's the proper course here? How do we get it right collectively? And so if I can just go to a couple of the quotes from Gimeno, because I think they inform this discussion. This is the Supreme Court's authority. And they say, quote, the Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container. And here we submit that we just don't have enough on those circumstances. Right? Those three key words, under the circumstances. We don't know what language the officer actually used. In one part, in the summary paragraph, which is I think ER 52, he says, I asked to search for weapons. But in his narrative report at ER 3032, he doesn't specify what he asked for. Why is that important? Because this is what Gimeno says, again to quote, the scope of a search is generally defined by its expressed object. What was the expressed object? I think we need to know that because that informs the analysis. So what language did the officer use? Did the officer see the chest bag at the beginning? Because what the officer says in his narrative report is that while doing the search, he saw it. Why is this important? Well, a reasonable person who doesn't know about an object certainly doesn't believe that the scope of consent extends to that object, if that makes sense. You can't assume that the scope of consent extends to something you don't know about. So those are some of the factual issues we don't have. I thought in the record it indicated that the bag, the chest bag, was removed in front of the officer or even maybe by the officer. That's correct. But what the officer, yes, but at the outset of the search, when he asked for consent, did he know about the chest bag? His report makes it seem that he didn't know. And that's a material fact that I would imagine the court would want to have answered. Again, I'm coming back to the chest bag is worn on the outside of the clothing, and if he's looking right at the defendant, how does he not know? It's right there and it gets removed. Well, because I would imagine the defendant is riding a bike and has a jacket on, and you wouldn't necessarily see that. I mean, this is the conversation we should be having. That's exactly the point, is that this is an important question. Okay, so my briefcase is right there. We can all see it. If you ask me, Your Honors, do I consent to a search of myself, I would say sure. But I wouldn't assume that that then extends to my briefcase. But what about, like, now? Or what about now? Or what about now? We need a clear rule and we just don't have the record to make it. Counsel, doesn't the record also show that Malgoza volunteered, I'm going to be honest with you, you're going to find a gun and drugs in there without even the officer saying, like, specifically. Like, there was no, I mean, the officer said, can I search you for weapons, that Malgoza said yes. The officer picks up the bag to return it to Malgoza, and Malgoza says, you're going to find a gun in there. So that at least implies that Malgoza thought the officer was going to search the bag, and, you know, I would say the officer reasonably then did search the bag after that statement. The way I see that, Your Honor, it actually cuts in the complete opposite direction. It cuts in the exact opposite. Okay. So that's a great question. When the officer says he didn't go, so it's an important thing to say is one point. We're not sure that he said, can I search you for weapons, right? His narrative report doesn't include that. Only that the second small paragraph report says that. I'm going to search you for weapons. We don't know actually what language he used. Second point is there's no indication he was picking up the bag to return it to Malgoza. What we think he was doing is picking up the bag to then search it. But why does that language really matter, what Your Honor is talking about? It matters for this reason. If my client, if Mr. Malgoza thought that his initial consent to search his person extended to his bag, he would have immediately, the jig would have been up at that point. He would have said, okay, this guy is going to search my bag. He's going to find the guns and the drugs. I might as well just tell him. But he didn't do that. He said, yeah, you can search me. Only when he goes and picks up the bag does he then make those admissions. That means he didn't think he was going to search it at the outset. He thought, okay, he's just going to pat me down, a little frisk, and I'm going to be good to go. So from his point of view, and of course it's an objective reasonableness test, we're not suggesting, but it at least informs the highly factual inquiry that this court should make before deciding the legal issue. Again, it's a small request for a remand. Okay. We've taken you over your time, but I'll give you one minute for rebuttal. Thank you, Your Honor. All right. And we'll hear now from Ms. Hines. Good morning, Your Honors. May it please the Court. Erin Hines on behalf of the United States. Mr. Malgoza consented to a search of his bag. The district court found that. He contested the voluntariness of the search in his papers below, correct? Yes, Your Honor. He did contest the voluntariness of the consent below, and the district court addressed that in her findings, and those findings were not clear error. Well, as I understood it, one of the things that was said before he asked to search was a reference to the ankle monitor, and you're on probation. So how are we to then read the consent to search? Is it an acquiescence in a probation search, or is this like going up to an ordinary citizen and asking to search? Yes, Your Honor. We would point the court to United States v. Gimeno. In United States v. Gimeno, the facts were analogous to the facts at hand here. In that case, the officers approached the defendant who was in an already parked car, and they questioned the defendant, and the court found in that case that the defendant did not place any explicit limits on the scope of his consent, and also that his general consent was sufficient to search a container in his car. I'm not getting to the issue of scope of consent yet. I'm trying to understand, you know, the voluntariness of the consent in the first instance. Are we looking at whether what would a reasonable innocent person have thought when confronted with that request? Would they view that as a request to consent to a probation search, or is it a consent to just search irrespective of probation? Yes, Your Honor. The government is not defending the search in this case on the basis of a probation search. But that was what he said right before he asked for the consent. Yes, Your Honor. And United States v. Kim, in that case, the court noted that when officers come upon a car that is already parked, that that is not a seizure, and the officer is allowed to ask questions relating to the purpose of that encounter. And in the same vein as United States v. Kim, the officer can ask an individual whether they consent to a search. But if an officer says, Are you on probation? Can I search? Would a reasonable person think that that means that you're invoking probationary search authority, which you're not willing to defend here? But is that what he consented to? Is that what a reasonable person would think the consent was? Your Honor, in United States v. Rodriguez, the court outlined five factors, and the factors in this case weigh in favor of finding that Mr. Malgoza's consent was voluntary. Although the officer did ask about his probation status, after he asked about his probation status, he asked if he was willing to consent to a search. And so the officer could have searched on the basis of probation without asking that additional question about whether he was willing to consent, but the officer didn't do that. He asked if he was willing to consent after having an encounter with Mr. Malgoza where he was inquiring into his safety, to the status of his motorcycle, and nothing about that interaction indicated that Mr. Malgoza was not free to leave. There was no use of authority. But invoking the probationary authority suggests that you're not free to decline. Well, he is subject to search based on his probation status. But you're not willing to defend it as a probationary search, but I'm wondering whether the invocation of the probationary authority and asking for the consent taints the voluntariness of the consent in a way that vitiates the district court's conclusion. That's the question I have for you. No, Your Honor. The district court considered the facts as outlined in ER 32 and 52 by the officer, and the district court found that the encounter was consensual and that although the officer asked about Mr. Malgoza's probation status, that nonetheless Mr. Malgoza consented to a search, and that search was a voluntary consent, Your Honor. And, Your Honor, I would like to address remand in this case and why remand is not appropriate in this case. The district court made findings with respect to the two reports that my colleague referenced, the probable cause report and Officer Nusch's report that he wrote following the stop, and the district court specifically found that those documents, quote, at ER 89, and they set forth a chain of events at ER 90. Although the two reports don't necessarily have every single fact in common between them, there nonetheless were sufficient facts for the district court to rely upon in finding that Mr. Malgoza consented to a search and that his consent included consent to search his bag. This court can rely upon the bedrock principles outlined in United States v. Gimeno regarding the scope of consent. The facts of that case are similar to the facts at hand here. I'm not seeing any further questions from the panel, and if that is the case, I would request that the court affirm the district court's findings. Thank you. Thank you. Thank you very much for the extra minute. Judge Collins, I'm not sure you got an answer to your question. So I think – But did you raise the specific voluntariness point in your briefing that I – No, but we raised it in a slightly different vein. We see the issue, but we see it in a slightly different way. Once he's lit up and then asked if he's on probation, that becomes a detention, because a reasonable person at that point – I mean, let's be real. If you're a reasonable convicted felon with an ankle monitor – But that's not the standard. The way we look at for consensual search is a reasonable innocent person. Right. So a reasonable innocent person who's on probation and wearing a monitor. Right. But that doesn't mean people on probation are not actively, presumptively committing crime. So we look at a reasonable person who's on probation. A reasonable person on probation wearing an ankle monitor who's lit up with lights and then asked if he's on probation and asked why. That person is not going to feel free to leave. I mean, that's just a fact. Except for we look at the totality, and here the totality is that this guy pulled over voluntarily. Correct. And so we've got a whole story here, and we can't just focus on the fact that he's on probation and the lights are on. That's, you know, that's an arbitrary or sort of a truncated version of what's going on here. That's right, Your Honor. We look at the – so let's – I mean, that's exactly what we're going to – that's exactly what we do. First of all, I think this, again, begs the question that this record is terrible, and we should go back and get a better record to decide. But leaving that – Counsel, what I am troubled by is if I'm wrong, please tell me, that counsel below actually said we don't need an evidentiary hearing, and their entire motion was focused solely on the issue of whether the traffic stop was lawful, and the trial court said there was no traffic stop, and resolving that issue. So the reason why there isn't a better record is because counsel said we don't need one. I'm troubled by that, too. I'm troubled by that, too. But, you know, again, can I answer, Your Honor? I'm sorry. Please. I'm troubled by that, but our goal here is to get it right, and this is – you know, this guy's doing 92 months, and it's not a gotcha game, right? I mean, he's doing 92 months. Let's get it right. And going back to your question is I exactly agree. At that point, this officer did everything right almost the entire time. I mean, let's be real. He stopped to help somebody. Then he noticed something. Then he raised it – then he noticed the ankle monitor, and then he asked about it. So that's the progression, and I totally agree with you. Is he seized when he's pulled over – when he stops? No. Is he seized when the lights go on? Probably not. But once we cross that threshold now, as Judge Collins put it, the innocent, convicted felon with the ankle monitor who's then asked about being on probation, that's when we cross the line. We raise it as a prolonged detention claim because that's the point – and the Chavez case I think is our best case on that. That's the point, Your Honor, where it crosses over. That's when he doesn't feel free to leave. And if we agree that he doesn't collectively, that he's not free to leave at that point, then the case law says it taints the consent. So we get to the same place that Your Honor was. We just get there in a slightly different – what do they say? There's many roads to the top of – many paths to the top of the mountain. We would ask for a remand. Let's get this right. The court can – this panel can retain jurisdiction. We can come back and argue this case, or it can be decided, but let's have a real record. Okay. Thank you. Thank you, counsel. The case just argued will be submitted. We thank counsel for their arguments.
judges: COLLINS, FORREST, SUNG